# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| J'MEI R. WALKER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:18-CV-0666-D |
| VS. | § | |
| | § | |
| WILLOW BEND MORTGAGE | § | |
| COMPANY, LLC, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION
### AND ORDER

In this action challenging an attempted foreclosure, defendant Wells Fargo Bank, N.A. ("Wells Fargo") removed this case to this court based on diversity jurisdiction, contending that defendant Willow Bend Mortgage Company, LLC ("Willow Bend") was improperly joined. Plaintiff J'Mei R. Walker ("Walker") did not move to remand. Several months after the case was removed, Wells Fargo moved for summary judgment, but the court ordered the parties to brief the issue of improper joinder before it would consider the motion. The parties' jurisdictional briefing is now complete. For the reasons that follow, the court *sua sponte* dismisses defendant Willow Bend on the ground that it was improperly joined, and grants Wells Fargo's motion for summary judgment.

In July 2013 plaintiff Walker took out a mortgage loan from defendant Willow Bend in the amount of $269,706.00.[1]  The loan was secured by a deed of trust against Walker's property located on E. Oates Road in Garland, Texas.  The deed of trust named Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary.  According to Wells Fargo's evidence, MERS assigned the note and deed of trust to Wells Fargo in June 2014.  The assignment appears to have been duly recorded in the official Dallas County land records.

Walker has since defaulted on the loan.  Wells Fargo's foreclosure counsel sent a notice of default to Walker on August 8, 2016, informing him that the debt had been accelerated and the full amount was due within 30 days.  On January 11, 2018 Wells Fargo's foreclosure counsel sent an additional notice to Walker informing him that a foreclosure sale would take place on March 6, 2018.

On March 5, 2018—the day before the scheduled foreclosure sale—Walker filed the instant lawsuit in Texas county court.  His original petition and application for temporary restraining order alleges that the Dallas County land records do not reflect any assignment of his mortgage from Willow Bend to Wells Fargo; that his note does not bear an indorsement or allonge; that Wells Fargo did not send him the pre-foreclosure notices

---

[1]In deciding Wells Fargo's motion for summary judgment, the court views the evidence in the light most favorable to Walker as the summary judgment nonmovant and draws all reasonable inferences in his favor.  *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

required by Texas law; that Wells Fargo failed to credit him for payments he made through some unspecified date in 2017;[2] and that Wells Fargo failed to respond to a request for a loan modification. Walker asserts that Wells Fargo violated the Texas Debt Collection Practices Act ("TDCPA"), Tex. Fin. Code Ann. §§ 392.001-404 (West 2016); that it failed to comply with Tex. Prop. Code Ann. § 51.002 (West 2014); and that it breached the contractual terms of the note and deed of trust. Walker also asserts that Willow Bend breached its fiduciary duty to him when it assigned his loan to Wells Fargo, because it knew about Wells Fargo's "pattern and practice of . . . disregard of applicable law in the servicing of mortgage loans." Pet. ¶ 8. He seeks injunctive and declaratory relief, compensatory and exemplary damages, and attorney's fees and costs.

Wells Fargo removed this case to this court based on diversity of citizenship, arguing that defendant Willow Bend, the only non-diverse defendant, was improperly joined. Wells Fargo now moves for summary judgment on all claims against it. Walker opposes the motion. At the court's request, the parties have also briefed the question whether the court has subject matter jurisdiction.

---

[2]More precisely, Walker's petition—which appears to be based on a template—alleges that "Defendant has failed to properly account for and acknowledge payments made through at least _____ 2017." Pet. ¶ 5(b)(1) (blank in original).

II

Wells Fargo contends that Willow Bend is improperly joined, and that the court therefore may exercise diversity jurisdiction over this case. The court agrees.

A

For a case to be removed based on diversity jurisdiction, "all persons on one side of the controversy [must] be citizens of different states than all persons on the other side." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (quoting *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004)). "The jurisdictional facts that support removal must be judged at the time of the removal." *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000) (citations omitted). Moreover, under 28 U.S.C. § 1441(b), a case cannot be removed based on diversity jurisdiction if any properly joined defendant is a citizen of the state in which the action is brought (here, Texas).

The doctrine of improper joinder is a narrow exception to the rule of complete diversity, and it "entitle[s] a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'" *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc); *see also Meritt Buffalo Events Ctr. LLC v. Cent. Mut. Ins. Co.*, 2016 WL 931217, at *2 (N.D. Tex. Mar. 11, 2016) (Fitzwater, J.). The doctrine allows federal courts to defend against attempts to manipulate their jurisdiction, such as by joining nondiverse parties solely to deprive federal courts of diversity jurisdiction. *See Smallwood*, 385 F.3d at 576. Because "the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns." *Gasch v. Hartford*

*Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007) (quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365-66 (5th Cir. 1995)). Therefore, the removal statute is strictly construed, with "any doubt about the propriety of removal [being] resolved in favor of remand." *Id.* at 281-82. In determining whether a party was improperly joined, the court "resolve[s] all contested factual issues and ambiguities of state law in favor of the plaintiff." *Id.* at 281. The party seeking removal bears a heavy burden to prove improper joinder. *Smallwood*, 385 F.3d at 574.

Improper joinder is established by showing that there was either actual fraud in the pleading of jurisdictional facts or that the plaintiff is unable to establish a cause of action against the nondiverse defendant in state court. *Parsons v. Baylor Health Care Sys.*, 2012 WL 5844188, at *2 (N.D. Tex. Nov. 19, 2012) (Fitzwater, C.J.) (citing *Smallwood*, 385 F.3d at 573). Under the second alternative—the one at issue in this case—the test for improper joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573; *see also Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003) (explaining that terms "no possibility" of recovery and "reasonable basis" for recovery have essentially identical meaning, and holding that pleadings must show more than "any mere theoretical possibility of recovery"). To assess "whether a plaintiff has a reasonable basis of recovery under state law,"

> [t]he court may conduct a [Fed. R. Civ. P.] 12(b)(6)-type
> analysis, looking initially at the allegations of the complaint to
> determine whether the complaint states a claim under state law
> against the in-state defendant. Ordinarily, if a plaintiff can
> survive a Rule 12(b)(6) challenge, there is no improper joinder.
> That said, there are cases, hopefully few in number, in which a
> plaintiff has stated a claim, but has misstated or omitted discrete
> facts that would determine the propriety of joinder. In such
> cases, the district court may, in its discretion, pierce the
> pleadings and conduct a summary inquiry.

*Smallwood*, 385 F.3d at 573 (footnotes omitted).

The analysis does not end with the conclusion that there is no possibility of recovery against the non-diverse defendant. "When the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, and that showing is equally dispositive of all defendants rather than to the in-state defendants alone," the removing party has failed to show improper joinder. *Id.* at 575. This principle is sometimes called the "common defense rule." *See* 14C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3723.1, at 362-63 (4th ed. 2018). Under the common defense rule, the court must remand the case "[i]f, but *only* if, the showing which forecloses [plaintiff's] claims against the non-diverse defendants *necessarily* and *equally compels* foreclosure of all their claims against all the diverse defendants." *Boone v. Citigroup, Inc.*, 416 F.3d 382, 391 (5th Cir. 2005).

When deciding whether a defendant has been improperly joined, a federal district court must apply the federal pleading standard. *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp. Ltd.*, 818 F.3d 193, 207-08 (5th Cir. 2016) (on rehearing). This standard

requires the plaintiff to plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 566 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions." *Iqbal*, 566 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

B

Applying the controlling standard, Wells Fargo has met its heavy burden of proving that Willow Bend has been improperly joined. The only claim that Walker brings against Willow Bend is for breach of fiduciary duty. Walker's petition appears, however, to contradict itself as to the nature of the relationship between Walker and Willow Bend. At

some points, the petition seems to allege that Willow Bend was itself a mortgagee. *See, e.g.,* Pet. ¶ 4 ("Plaintiff executed a Note . . . and a Deed of Trust . . . for the benefit of Willow Bend covering the Property."). At others, the petition suggests that Willow Bend was a mortgage broker, whose task was to secure financing on Walker's behalf. *See, e.g., id.* ¶ 8 ("As an entity steering the financing of its newly constructed homes to a mortgage banker, Willow Bend had a fiduciary duty to bring a mortgage banker in to finance the transaction . . . on the best possible price and terms[.]"). Walker cites authority suggesting that a mortgage broker owes a fiduciary duty to its client. *See Kelly v. Gaines*, 181 S.W.3d 394, 413-15 (Tex. App. 2005), *rev'd on other grounds*, 235 S.W.3d 179 (Tex. 2007). But this authority is inapposite.

A limited, summary assessment of the evidence submitted by the parties in relation to Wells Fargo's motion for summary judgment reveals that Willow Bend was a mortgage *lender*, not a mortgage *broker*. *See Smallwood*, 385 F.3d at 573-74 (recognizing district court's discretion to pierce the pleadings where plaintiff has omitted or misstated discrete facts that would determine propriety of joinder). Wells Fargo has submitted a note and deed of trust executed by Walker in favor of Willow Bend, as *lender and mortgagee*. The note and deed of trust are admissible evidence that the court may consider. *See infra* § IV. This evidence makes it clear that Willow Bend was not Walker's mortgage broker, but rather his lender.

Because Willow Bend was Walker's mortgage lender, Walker's breach of fiduciary duty claim fails as a matter of law. In Texas, there generally is no fiduciary relationship

between a mortgagor and mortgagee. *See Wakefield v. Bank of Am., N.A.*, 2018 WL 456721, at *5 (Tex. App. 2018, no pet.) (citing *Lovell v. W. Nat'l Life Ins. Co.*, 754 S.W.2d 298, 303 (Tex. App. 1988, writ denied)). Nor is there such a relationship between a loan servicer and its client. *Williams v. Fed. Nat'l Mortg. Ass'n*, 2012 WL 443986, at *3 (N.D. Tex. Feb. 13, 2012) (Robinson, J.). Texas courts have found fiduciary relationships between borrowers and lenders before, but only based on "extraneous facts and conduct, such as excessive lender control or influence in the borrower's business activities." *Wakefield*, 2018 WL 456721, at *5 (quoting *Bank One, Tex., N.A. v. Stewart*, 967 S.W.2d 419, 442 (Tex. App. 1998, pet. denied)). Walker's petition contains nothing that plausibly alleges that there are special circumstances that gave rise to such a relationship. Wells Fargo has therefore met its heavy burden of proving that Walker cannot recover from Willow Bend for a breach of fiduciary duty.

This showing is dispositive of Walker's claim against Willow Bend, but not of his claims against Wells Fargo. Willow Bend is the only party named in the breach of fiduciary duty portion of the petition. And Willow Bend is not subject to any other claims: all of Walker's other claims explicitly name Wells Fargo as the defendant. The common defense rule therefore does not apply. *See Smallwood*, 385 F.3d at 575. The court concludes that Willow Bend is improperly joined.

Because Willow Bend is improperly joined, it is within the court's power to dismiss it from the case. *See Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016) (en banc) ("[I]f the plaintiff improperly joins a non-diverse defendant, then the court may disregard the

- 9 -

citizenship of that defendant, dismiss the non-diverse defendant from the case, and exercise subject matter jurisdiction over the remaining diverse defendant."); *see also, e.g., Allen v. Lowe's Home Ctrs., Inc.*, 2012 WL 1190255, at *1 (W.D. La. Mar. 1, 2012) (recommending, after *sua sponte* ordering jurisdictional briefing, that non-diverse defendant be dismissed as improperly joined), *rec. adopted*, 2012 WL 1185025, at *1 (W.D. La. Apr. 9, 2012).  The court thus dismisses Walker's sole claim against Willow Bend without prejudice.[3]

III

The court now turns to Wells Fargo's motion for summary judgment.

When a party moves for summary judgment on claims on which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovant's claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party does so, the nonmovant must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The nonmovant's failure to produce proof as to any essential element of a claim renders all other facts immaterial.  *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).

---

[3]The dismissal must be without prejudice.  *Alviar v. Lillard*, 854 F.3d 286, 291 (5th Cir. 2017).

Summary judgment is mandatory if the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

## IV

Wells Fargo submits the declaration of Brandon McNeal ("McNeal"), an employee of Wells Fargo. Appended to McNeal's declaration are two exhibits: Walker's note and loan payment records. Walker offers an argument that appears to go to the admissibility of the note and loan payment records, although it is not framed as an objection:

> The Declaration of Brandon McNeal . . . claims personal knowledge obtained by examination of records, not from long personal familiarity with the Loan . . . . Therefore, the statement in paragraph 2 that entries in the Loan Records were made at the time of the events may not be meaningful, since Mr. McNeal cannot possibly testify as to the two-step or three-step chain of events of assignment or abortive assignment of the Loan, since his knowledge is only, at best, of practices of [Wells Fargo] itself.

P. Resp. 1-2 (citations omitted). This argument appears to challenge whether the exhibits appended to McNeal's declaration fall within the business records exception to the rule against hearsay. The material that a party cites in support of summary judgment must be, in some form, admissible in evidence. *See* Rule 56(c)(2). Hearsay is inadmissible unless an exception applies. *See* Fed. R. Evid. 802. In order to take advantage of the business records exception to the hearsay rule, the proponent of an exhibit must show, *inter alia*, that the exhibit was made at or near the time of the event that it records. Fed. R. Evid. 803(6)(A). Moreover, an affidavit is only competent summary judgment evidence to the extent it is based on personal knowledge. *See Cormier Expl. & Prod. Co.*, 969 F.2d 1559, 1561 (5th

Cir. 1992) (per curiam).  Walker's argument seems to be that McNeal cannot establish that the note and loan records fall within the business records exception because he has no *personal* knowledge of whether the documents satisfy Rule 803(6)(A).

The court understands Walker to be advancing two different arguments for why McNeal lacks personal knowledge.  First, Walker contends that McNeal obtained his knowledge about when Wells Fargo's records were created from an "examination of records, not from long personal familiarity with the Loan," and therefore did not truly have personal knowledge of this fact.  P. Resp. 1.  "But '[t]here is no requirement that the witness who lays the foundation be the author of the record or be able to personally attest to its accuracy.'" *United States v. Armstrong*, 619 F.3d 380, 384-85 (5th Cir. 2010) (alteration in original) (quoting *United States v. Brown*, 553 F.3d 768, 792 (5th Cir. 2008)).  For the purposes of the business records exception, a "qualified witness is one who can explain the record keeping system of the organization and vouch that the requirements of Rule 803(6) are met."  *Id.* at 385 (quoting *Brown*, 553 F.3d at 792).  Whether a witness is qualified can be inferred from his position within an organization.  *See DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005).  McNeal avers that he is a "Vice President [of] Loan Documentation for Wells Fargo" and has knowledge of how Wells Fargo's records are maintained.  D. App. 000002. This is sufficient.

Second, Walker's argument can be read as an objection to Wells Fargo's exhibits to the extent they were created before Wells Fargo took ownership of the loan.  The idea would be that a declarant like McNeal—who is only familiar with *Wells Fargo's* business

practices—has no knowledge of whether any pre-Wells Fargo records meet the business records exception. This formulation of the argument also fails. "[T]here is no requirement that [business] records be created by the business having custody of them." *Cline v. Deutsche Bank Nat'l Tr. Co.*, 2015 WL 4041791, at *3 (N.D. Tex. July 2, 2015) (Fitzwater, J.) (quoting *United States v. Duncan*, 919 F.2d 981, 986 (5th Cir. 1990)).

> Rule 803(6) allows business records to be admitted if witnesses testify that the records are integrated into a company's records and relied upon in its day to day operations. Even if the document is originally created by another entity, its creator need not testify when the document has been incorporated into the business records of the testifying entity.

*Id.* (quoting *Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1343 (Fed. Cir. 1999)). It is sufficient that the records in question are now part of Wells Fargo's business records. Walker's objections therefore lack merit.

V

Walker alleges that Wells Fargo violated Tex. Prop. Code Ann. § 51.002(b) and (d) and breached the contractual terms of the note and deed of trust. Pet. ¶¶ 6-7. Wells Fargo is entitled to summary judgment on these claims because Walker has failed to show that he complied with his obligations under the note and deed of trust, as required to prove a breach of contract claim, and because the Texas Property Code confers no private right of action.

A

Wells Fargo has produced evidence, in the form of Walker's loan records, indicating that Walker has not performed his contractual obligations by remaining current on his

mortgage payments until the alleged breach.  Walker has failed to identify evidence to the contrary.  Walker therefore lacks evidence for an essential element of his breach of contract claim.  *See Metcalf v. Deutsche Bank Nat'l Tr. Co.*, 2012 WL 2399369, at *10 (N.D. Tex. June 26, 2012) (Fitzwater, C.J.) (citing *Obuekwe v. Bank of Am., N.A.*, 2012 WL 1388017, at *5 (N.D. Tex. Apr. 19, 2012) (Means, J.) (holding that plaintiff "cannot state a claim for breach of the deed of trust because [plaintiff] admits that she defaulted on the loan," and therefore cannot demonstrate that she performed her duties under the contract); *Owens v. Bank of Am., NA*, 2012 WL 912721, at *4 (S.D. Tex. Mar. 16, 2012) (dismissing breach of contract claim because "plaintiffs have undisputedly not performed their contractual obligations because they have not stayed current on their mortgage payments")).  This is alone a sufficient basis on which to grant summary judgment on the claim.  *See Lewis v. Bank of Am., N.A.*, 343 F.3d 540, 544-45 (5th Cir. 2003) (requiring proof of all four elements of breach of contract claim).

B

Walker alleges that Wells Fargo violated Tex. Prop. Code Ann. § 51.002(b) and (d), either by failing to provide the statutorily-required foreclosure notices, or by wrongfully providing such notices when it lacked capacity to foreclose.[4]  Pet. ¶ 6.  This claim, asserted

---

[4]Walker clarifies in his response brief that he "does not assert a private right of action under Texas Property Code Chapter 51," but instead alleges that Wells Fargo's violations of the Property Code underlie his TDCPA and breach of contract claims.  P. Resp. Br. 6.  For the sake of thoroughness, however, the court will address Walker's Property Code allegations as if they were a separate cause of action.

directly under the Property Code, fails as a matter of law because "[§] 51.002 . . . does not provide a private right of action." *Solis v. U.S. Bank, N.A.*, 2017 WL 4479957, at *2 (S.D. Tex. June 23, 2017) (citing *Tex. Ashton v. BAC Home Loan Servicing, L.P.*, 2013 WL 3807756, at *4 (S.D. Tex. July 19, 2013)), *aff'd on other grounds*, 726 Fed. Appx. 221, 222 (5th Cir. 2018) (per curiam); *see also Rucker v. Bank of Am., N.A.*, 806 F.3d 828, 830 n.2 (5th Cir. 2015) ("Although the Texas Supreme Court has not decided this issue, the federal district courts that have addressed it seem to conclude that Section 51.002(d) does not intend an independent private cause of action.").[5] The court therefore grants Wells Fargo's motion for summary judgment on this claim.

VI

A

The court now turns to Walker's capacity- and notice-related TDCPA claims. Walker alleges that, due to defects in the chain of assignments, Wells Fargo lacks authority to foreclose, and therefore acted wrongfully when it sent him notice of its intent to foreclose on his property. Walker also asserts that Wells Fargo lacked capacity to send him the pre-foreclosure notices required by Tex. Prop. Code Ann. § 51.002 because of these same defects in the chain of title. Finally, Walker alleges that Wells Fargo did not *actually* send him the

---

[5]Courts sometimes construe claims under the Texas Property Code as common-law wrongful foreclosure claims. *See, e.g., Solis*, 2017 WL 4479957, at *3. But where, as here, no foreclosure actually occurred, the plaintiff cannot recover damages for an "attempted wrongful foreclosure." *See De La Garza v. Bank of N.Y. Mellon*, 2018 WL 5725250, at *4 & n.8 (Tex. App. Nov. 1, 2018, no pet.) (collecting cases).

required notices. Walker asserts that all of these actions and omissions violated Tex. Fin. Code Ann. § 392.301(a)(8). *See* Pet. ¶ 5(a). To prevail on this claim at trial, Walker would have to establish either (1) that Wells Fargo lacked capacity to foreclose, or (2) that Wells Fargo did not send sufficient notice to Walker before the scheduled foreclosure sale.

B

Wells Fargo is entitled to summary judgment on these TDCPA claims to the extent they are premised on the allegation that Wells Fargo lacks authority to foreclose.

The petition asserts that there is no evidence in the Dallas County public records of any assignment of Walker's mortgage to Wells Fargo from Willow Bend. But Wells Fargo has submitted, *inter alia*, an exhibit that appears to be an assignment of Walker's note and deed of trust from MERS, as nominee for Willow Bend, to Wells Fargo. The document is stamped as recorded. This document shows the complete chain of assignments from Willow Bend to Wells Fargo. Wells Fargo has therefore met its initial burden of pointing to the absence of evidence of an essential element of Walker's claims (in fact, it has produced evidence that *negates* an essential element of Walker's claims).

Walker argues that certain inconsistencies between the indorsements on the note, the assignment documents, and the loan payment history create a genuine factual dispute that forecloses summary judgment. But there are no such inconsistencies. The note bears three indorsements: one undated indorsement from Willow Bend to Wells Fargo, one canceled indorsement in blank by Wells Fargo (with the cancellation dated January 20, 2015), and one undated, apparently-current indorsement in blank by Wells Fargo. These indorsements are

fully consistent with the June 4, 2014 assignment of the mortgage from Willow Bend to Wells Fargo. That assignment is also consistent with Walker's loan payment history: although the payment history contains entries dated between August 2013 and June 2014, those entries clearly were carried forward from Willow Bend's servicing of the loan. Indeed, the date of the first payment in the loan payment history—August 29, 2013—is consistent with the July 2013 origination of the loan and with the first-payment due date of September 1, 2013. Walker has thus identified no evidence that creates a genuine dispute as to whether Wells Fargo owns the note and deed of trust.

Walker challenges Wells Fargo's evidence on the ground that McNeal's declaration does not indicate whether McNeal examined the *original* note and deed of trust, or whether he instead examined mere electronic copies of the original documents. This argument seems to derive from the so-called "show-me-the-note" theory: the notion that if a bank or mortgage servicer does not have the borrower's original, wet-ink signature note, it cannot foreclose. *See Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 253 (5th Cir. 2013). But the Fifth Circuit has unequivocally rejected this theory. *See id.* at 254. Thus even if there is a genuine dispute as to whether McNeal examined the original, wet-ink loan documents, the dispute is immaterial because it does not affect Wells Fargo's authority to foreclose.

## C

Wells Fargo is also entitled to summary judgment on these TDCPA claims to the extent they are premised on the allegation that Wells Fargo never sent the required pre-foreclosure notices.

Sections 51.002(b) and (d) of the Texas Property Code require that certain forms of notice be given to borrowers before a foreclosure sale. Under § 51.002(d), the loan servicer must send the borrower "written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b)." Then, at least 21 days before the date of the sale, the borrower must be served with written notice of the sale itself—also by certified mail. *See* Tex. Prop. Code Ann. § 51.002(b)(3).

Here, Wells Fargo has submitted evidence showing that it provided the requisite notice to Walker, thereby negating an essential element of Walker's claims. Wells Fargo, through its foreclosure counsel, sent Walker a notice of default by certified mail on August 8, 2016 that gave Walker 30 days to cure. On January 11, 2018 Wells Fargo's foreclosure counsel sent a notice of acceleration and notice of sale to Walker by certified mail, informing him of the scheduled foreclosure sale. These notices are sufficient to satisfy § 51.002. Walker offers no evidence to the contrary. Summary judgment in favor of Wells Fargo is therefore appropriate insofar as Walker's claims rely on the allegation that Walker never received the statutorily-required notices.[6]

---

[6]The evidence adduced by Wells Fargo also provides an additional ground to dismiss Walker's breach of contract and Property Code claims, which are based on the same interrelated factual allegations. *See* Pet. ¶¶ 6-7.

## VII

Having disposed of Walker's capacity- and notice-related claims, the court now turns to the remainder of Walker's TDCPA claims.

### A

Walker alleges that Wells Fargo "failed to properly account for and acknowledge payments," and "demanded Plaintiff pay one or more sums above the amounts provided by the Note and Deed of Trust and/or that were not owed to Defendant." *See* Pet. ¶¶ 5(b)(1), 5(c)(1)-(2). In moving for summary judgment, Wells Fargo submits Walker's loan payment history, which negates these claims. Walker argues that the loan history actually *supports* his claims, because it "shows, at first count, sixty-four instances where paid funds were 'unapplied' to the Plaintiff's Loan account, yet Plaintiff was charged 'fees assessed or recovered' . . . as alleged in Plaintiff's various claims under the Texas Debt Collection Act." P. Resp. 2. But the loan payment history clearly indicates that every time Walker made a payment that was initially "unapplied," Wells Fargo later credited that payment to Walker's principal, interest, and escrow balances. And Wells Fargo provided an explanation every time it assessed a fee: most often, the fee was a late charge. The note expressly authorizes such charges. Moreover, after a series of "adjustments" by Wells Fargo, it appears that Walker's current fee balance is zero—so Wells Fargo is not actually demanding *any* fees from Walker at this time, let alone any unauthorized fees. There is therefore no genuine dispute of material fact that would preclude summary judgment on these claims.

B

Walker alleges that Wells Fargo violated provisions of the TDCPA—specifically, Tex. Fin. Code Ann. § 392.304(a)(8) and (19)—by failing to respond to a request for a loan modification. Pet. ¶ 5(c)(3). This claim fails as a matter of law. "Communications in connection with the renegotiation of a loan do not concern the collection of a debt but, instead, relate to its modification and thus they do not state a claim under Section 392.304(a)(19)." *Thompson v. Bank of Am. Nat'l Ass'n*, 783 F.3d 1022, 1026-27 (5th Cir. 2015). As to the § 392.304(a)(8) claim, Wells Fargo points to the absence of evidence in support of an essential element of this claim: that Wells Fargo made *affirmative statements* that were false or misleading. *See id.* at 1026. Walker has failed to designate any evidence creating a genuine dispute of material fact on the matter. Wells Fargo is therefore entitled to summary judgment on this claim.

C

Walker also alleges that Wells Fargo violated Tex. Fin. Code Ann. § 392.303(a)(2) by "threaten[ing] to conduct one or more substitute trustee's sales of the property." Pet. ¶ 5(b)(2). Section 392.303(a)(2) forbids "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." The court has not found, and Walker has not presented, any authority for the proposition that a foreclosure qualifies as "interest or a charge, fee, or expense incidental to" a mortgage loan. Wells Fargo is therefore entitled to summary

judgment on Walker's TDCPA claim in this respect.[7]

* * *

For the reasons stated, the court grants Wells Fargo's motion for summary judgment and *sua sponte* dismisses Walker's action against Willow Bend without prejudice based on improper joinder.

**SO ORDERED**.

April 11, 2019.

Sidney A. Fitzwater
_____
SIDNEY A. FITZWATER
SENIOR JUDGE

---

[7]Walker seeks various forms of relief that are premised on the viability of the claims discussed above.  He requests, *inter alia*, injunctive relief, a declaratory judgment setting aside any substitute trustee's deed should a foreclosure sale take place, statutory damages, actual damages, and attorney's fees.  Because Wells Fargo is entitled to summary judgment on all of Walker's substantive claims, Walker's requests for relief are denied.